## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | DOCKET NO.  2:21-cr-189-NT |
| | ) | |
| BENJAMIN CONROY | ) | |

### AMENDED DEFENSE SENTENCING MEMORANDUM

**Summary**

We suggest a sentence of 216 months (18 years) followed by 7 years of supervised release with the standard and PSR recommended special conditions.  An eighteen year period of incarceration, three years longer than the statutorily required minimum mandatory sentence, is "sufficient but not greater than necessary" based on application of the sentencing factors set out in 18 U.S.C. §3553(a) and in particular the nature and circumstances of the offense and the characteristics of the offender. It punishes, provides deterrence, protects society, allows for rehabilitation and is consistent with sentences in similar cases.

**Benjamin Conroy**

Benjamin is 33 years old. He has never before been incarcerated. He graduated from the University of Maine at Orono in 2012 and obtained his teaching certificate in 2014. PSR ¶ 55. He worked as an education technician in schools and programs since about 2014. PSR ¶ 60. At the time of the misconduct he was a special education technician in the Portland School District. He has no history of misconduct at any job. He has no history of physically, sexually, verbally or emotionally abusing anyone - child or adult. The conduct is aberrant having occurred during a period of bi-polar mania.

Benjamin was raised in South Portland in a close family of his parents and three siblings.  He is the youngest of the three boys, followed by his sister. As children, Benjamin

1

and his brothers were very involved in sports.  Benjamin played soccer, basketball and track.
¶ 44.  Benjamin has a number of physical and emotional traumas that have undercut his
success.  He was sexually molested by an adult family friend around age 5 or 6. ¶ 43.  This
adult took him to swimming lessons and touched him in the locker room and shower. He did
not tell his parents or brothers and kept this inside until very recently.  He never engaged in
counseling to address the trauma.  In his mid teens he suffered a serious back injury playing
soccer. ¶ 44. He went through several years of chronic back pain and misdiagnosis of his
injury.  ¶ 47. He was prescribed opiates for the pain eventually leading to addiction.  Equally
damaging was the effect this had on his self confidence.  He knew his back hurt yet the
medical community kept telling him they could find no reason for his pain, labeling it
"phantom pain." Id.   The pain was disabling and undercut his previous ability to excel as an
athlete.  He had bouts of depression. Finally at age 20 a different doctor located the broken
vertebra which was surgically repaired.  The experience - five years of being told there was
nothing wrong only to finally find he had a surgically repairable break - left Benjamin wary
of the medical profession.

Following college Benjamin's addiction and depression grew. ¶ 50.  He began
treatment when he was 27. Id. He was diagnosed with substance use disorder and eventually
with anxiety, depression and ADHD.  A complicating factor was the illness of his then
fiancee E.F.  They were together for eight years and engaged. E.F. developed Hodgkin
lymphoma, a rapidly spreading form of cancer.  Benjamin was by her side throughout her
successful battle and treatment.  Yet he was also abusing opiates and xanax.[1] Although E.F.
recovered from cancer, the relationship did not.  They parted ways in 2018.  Benjamin was
devastated. ¶ 45. He sought inpatient treatment at Maine General. ¶ 50. The same month he
had a driving accident resulting in a head injury and was later diagnosed with post-

---

[1] Xanax is a benzodiazepine often prescribed for anxiety and panic attacks. It is a
depressant or "downer" and highly addictive.

concussion syndrome. ¶ 48. A year latter Benjamin returned to Maine General following a relapse. ¶ 51. A neuropsychological evaluation confirmed post-concussion syndrome. Id. It also reported a history of bipolar disorder. He reported a manic episode in December 2018. In 2019 he reported being prescribed Lamictal (lamotrigine) for bipolar disorder type I and "finds it beneficial." Lamictal is a mood stabilizer used to treat the depressive aspect of bipolar disorder. Unfortunately, it does not address mania. On 8/27/21 MaineGenral confirmed the diagnosis of bipolar disorder and he was again prescribed Lamictal. Id.

Benjamin was seen by Elise C. Magnuson, Psy.D., LCSW, in May, 2022 for a comprehensive psychological evaluation. ¶ 52. Defense Exhibit 2. Doctor Magnuson found "Mr. Conroy is correctly diagnosed with bipolar disorder. He has likely not had the most efficacious treatment because of the difficulties with differential diagnosis, his drug use confusing the clinical picture, and his reluctance to volunteer symptoms. He does not appear to have informed those he was working with that he was still experiencing symptoms; thus, he was not getting the greatest possible benefit from the medications. He was likely symptomatic at the time he was accused of engaging in crimes." Id.; Report of Dr. Magnuson, p. 12.

Benjamin's family is trying to understand how the son, brother, nephew they knew became engaged in the case conduct. Their letters, Defense Exhibit 1, outline how "out of character" the conduct is from the Benjamin the know. "These current charges against Benjamin are COMPLETELY out of character from what we know of our son." Letter of James Conroy. "Benjamin's entire adulthood, he has always been an advocate of defending and working with disadvantaged youths. He strongly believes in this. He has a love of camping, hiking and gardening. Benjamin has always been sensitive, caring and compassionate." Id. Visiting Benjamin weekly while in jail, James notes, "During these visits and with proper medication, Benjamin appears to be considerably healthier and more

coherent." Id.

The family all reference the emotional toll of Benjamin's addiction and the end of his relationship with his fiancé E.F. His mother writes, "His behavior of 15 months ago came as a huge shock to us and everyone who knew him! So uncharacteristic of him! 15 months later I am still in shock and disbelief! I do not know what happened with him-was it the years of drug use, the multiple concussions, the mental illnesses or a combination of all 3?!" Letter of Cheryl Conroy. "I wish all of you reading this letter could have known him before and then you would understand what I'm saying about what a good person he was!" Id. His brother adds, "Benjamin has always had a big heart and been quick to lend a helping hand.""Benjamin has always been a gentle soul that loves family, nature, gardening, animals, cooking, sports, and giving of his time selflessly." Letter of Nicholas Conroy. "Despite all of these struggles, [addiction, car accidents, concussions] at the time of his arrest, Benjamin had been clean for considerable time, had a steady job, had an apartment with his long term girlfriend, and was seemingly happy and well on his way to long-term recovery." Id. "As his older brother and having known him his entire life, this incident is completely out of character from anything that Benjamin has ever done, even during his addiction years. Benjamin has expressed his deep remorse to our family for his actions." Id. His aunt adds, "Judge Torresen, beginning when I received news of the charges and continuing up to the present, I've had one reoccurring response: nothing about this makes sense; nothing about this is consistent with the young man I've known." Letter of Terri Ann Bourke.

**Comparison with Other Cases and  Disparity**

The First Circuit reiterates, "[t]here is no single reasonable sentence in any particular case but, rather, a universe of reasonable outcomes," *United States v. Walker*, 665 F.3d 212, 234 (1st Cir.2011), and "[w]e generally respect the district court's sentence as long as the court has provided a plausible explanation, and the overall result is defensible," *United States*

*v. Innarelli*, 524 F.3d 286, 292 (1st Cir.2008); *U.S. v. Prosperi*, 686 F.3d 32, 43 (1st Cir. 2012)(J. Lipez).[2] An appropriate sentence may be lengthy, yet still below the advisory range. This is such a case. Congress provides a sentencing baseline by requiring a 15 year minimum mandatory sentence. Benjamin accepts that the conduct in this case likely calls for a sentence above the minimum.

**Conduct and Proportionality**

Benjamin admits his misconduct. While a school educational technician he caused a non-verbal special needs child to touch and massage his enlarged penis. He filmed that with his phone. The two videos showing the conduct last about 17 seconds and 27 seconds. Less than a minute. There is no evidence of climax. There is no indication he touched the child sexually. There is no oral touching. Benjamin violated his duty to a student, to a child, to her family. He caused her to touch him for perhaps a minute.

Graphic and as unpleasant as this is, proportionality in sentencing requires that we compare his conduct with that committed by others. Benjamin did not sexually touch the child. He guided her hand with his hand. He did not disrobe her. He did not touch her private areas. He did not have sex with her. He did not penetrate her. There was no oral touching.

A summary of cases in the District demonstrates a range of sentences in exploitation cases, almost all of which also included child pornography counts.

• Almost identical conduct in *Niski* resulted in a sentence of 16.5 years and Niski was a criminal history V.

• *Mocarsky* was also a teacher who took pornographic photographs at school of

---

[2] The circuit regularly reminds us of these maxims, *U.S. v. Jeffrey Bruns*, 15-1046 (1st . Cir 2015)(affirming sentence).

multiple kindergarten students. Judge Woodcock found Mocarsky did not accept responsibility, sentencing him to 16 years (192 months).

- *Cheese* initially had an on-line relationship with a 13 year old, then flew to Maine and photographed himself having sex with her on three occasions. He was sentenced to 17 years (204 months).

- *Andy Goodall* took pornographic photos of several children and posted them on various web sites. He was sentenced to 250 months. (20.8 years).

- *Paul Henry* recorded himself having sex with a minor (age 15) and distributed it over social media to over ten other people. He was sentenced to 15 years in a C plea.

- Those receiving 300 month sentences (25 years) engaged in repeated acts of sexual abuse of minors involving penetration. In most of the 300 month cases, the defendant raped and sodomized the child on multiple occasions and recorded it. In those cases, the child was naked and was sexually penetrated. In Conroy, the child remained clothed, the child was not touched sexually and it was the child touching Conroy with the child's hand. Without minimizing the seriousness of Conroy's conduct, proportionally, it is less culpable than that of Muise, Veazie, Donahue, Hinkley and Carolissen – all of whom were sentenced to 300 months (25 years).

**Sentences of 20 Years or Less**

**Wayne Niski**, 2:15-cr-115-JDL. Niski was charged with exploitation and three counts related to Child Pornography including transportation. He pled to exploitation and was sentenced to **198 months (16.5 years) and 10 years of supervised release**. The offense conduct included him taking photographs of the young victim showing sexual conduct. The photographs were taken when she was visiting - primary custody was a different adult. He was already a felon and a criminal history V. He had well over 700 child pornography images and videos and was engaged in on-line trading images with others.

**U.S. v. Mocarsky**, 11-cr-84-JAW. Judge Woodcock imposed a sentence of **192 months**. A kindergarten teacher, Mocarsky had multiple kindergartners "dress up" and he then took pornographic pictures of them during school. ECF#37, prosecution version and ECF#52, Government Sentencing Memorandum at p. 2 (defendant told Minor A to pull a bikini up between her vagina and buttocks, exposing her genital area. He then posed Minor A before he took photographs of her; the defendant's assertions that the children posed themselves in these pictures without his direction seriously undermines his assertion that he is taking responsibility for his actions and that he is not attempting to minimize his actions). This was conduct by a teacher and he was found to have not accepted responsibility.

**U.S. v. Cheese**, 13-cr-155-JAW. The defendant established an on-line relationship with the victim. He traveled from England to Bangor, Maine and met the 13 year old victim at least three times in hotel rooms. On each occasion he had her engage in sex acts and recorded the conduct. Prosecution version ECF#16. While the victim was 13, the conduct was actual sex and photographed. Judge Woodcock imposed a sentence of **204 months**.

**U.S. v. Andy Goodall,** 1:16-cr-10-JAW. Mr. Goodall took photos of children exposing their genitals and children in underwear and posted them on websites. He took additional pornographic images of two of the children. The web posting put the images into internet circulation. He was friends with the children's parents and was in a custodial capacity babysitting one of the children. He sought to trade the images for other child pornography on-line. He had at least 900 images and 44 videos of child pornography. He was sentenced to **250 months (20.8 years)**.

**Paul Henry**, 14-cr-64-JDL. Paul Henry was sentenced to **180 months** for production of child pornography. Henry recorded himself engaged in sexual activity with a minor on several occasions and then shared video clips of portions of the activity with at least ten other

people via social media.  The sentence represented the minimum mandatory and a binding plea agreement.

**Thomas King**, 1:11-cr-121-JAW, 741 F.3d 305 (1st Cir., 2014). The defendant produced a number of child pornography video files of the victim masturbating. King made the videos by hiding a small video camera in the victim's bathroom, which then recorded to an attached computer. Investigators also found four CDs containing child pornography belonging to King. Judge Woodcock found King had not accepted responsibility for his actions because he denied knowing he was making video recordings. The government offered King a plea agreement whereby he could forgo prosecution for Exploitation under 18 U.S.C. §2551 (with its fifteen-year mandatory minimum) in exchange for a plea to Possession. King accepted this offer, and was sentenced to **72 months incarceration**. The First Circuit affirmed the sentence, calling the crime involved "particularly repellent." *Id*. Recognizing the charging difference, it remains valuable to note the sentence of 72 months falls well below the 120 month statutory maximum King faced. The conduct occurred over a long period of time, it was not aberrant. King was found to have engaged in a pattern of abuse. King was also in a care taking/parental role.

**Frederick Butler,** 13-cr-187-NT was convicted of two counts of gross sexual assault on minors in 1995.  In 2001, he was convicted in Maine Federal Court of receiving child pornography.  Two months after completing supervised release he *again* engaged in possessing and distributing child pornography.  The government sought a sentence of 300 months. ECF #41, p. 1.  The content of the e-mails sent by Mr. Butler demonstrated predatory intentions and a continuing desire to engage in sex with young boys.  Id., pp. 4-6.  Butler faced a minimum mandatory of 15 years and maximum of 40 years.  Id. 7.  Judge Torresen entered a sentence of **20 years** (240 months).

**Sentences of 300 months (25 years)**

   **U.S. v. David Muise,** 13-cr-12-NT. Mr. Muse engaged in sexual abuse of the young victim in front of a web camera via Skype.   Others were watching and recording the abuse in a live broadcast. Recovered images showed him vaginally penetrating the child as well as having the child engage in oral sex with him. He had hundreds of additional child pornography images.  The PSR established an advisory range of life with a 30 year statutory maximum which the government sought. Musie was a military veteran suffering from PTSD. Judge Torresen imposed a sentence of 25 years followed by 20 years of supervised release. The conduct in Muise included rape and oral sex, and was recorded and broadcast to others. Muise received a custodial enhancement. Rape of a child is far more culpable than having a child touch a penis with their hand.

   **Christopher Veazie**, 2:11-cr-202-GZS. Mr. Veazie possessed over 2000 images and 400 videos of child pornography. He had photos of him sexually abusing a young boy including his penis in the boys mouth, buttocks and sodomizing the boy. Judge Single sentenced him to **300 months**.

   **Derek Hinkley**, 2:13-cr-49-NT, brought two young boys ages 12 and 15 into his home, showed them pornography, forced them to masturbate and filmed that, broadcasting the images of the boys masturbating online. He was sentenced to 300 months.

   **David Donahue**, 2:19-cr-24-JDL, had intercourse and oral sex with a 6 year old victim, and made photographs of his naked victim's genitals and of him sexually abusing her. He had a Dropbox account with over 1,000 other child pornography images. He had a prior state sexual abuse conviction. He was sentenced to **300 months**.

**Denver Carolissen,** 2:14-cr-127-NT, engaged in sexual conduct with a minor victim from age 8 to 12 years old while filming and sharing the images over the internet. He created and shared many videos including images of him engaged in penetration of the child victim with both his penis and his fingers. He also made videos similar to the two videos Conroy made of the minor massaging his penis. He had additional vaginal and anal sex with minors. This all occurred after he had served a prison sentence for possession of child pornography. Judge Torresen sentenced him to 240 months on the Exploitation and 60 months on Transportation of child pornography for a total sentence of **300 months** (25 years).

### Seriousness of the Offense

The offense is serious. Benjamin was a school employee who victimized a special education student in his care. He documented the victimization. The video shows him directing the child victim to place her hand on his penis. The videos are about 17 seconds and 27 seconds long. The touching is limited to the child's hand. Benjamin uses his own hand to direct the child to massage him. This occurred during school hours, in a school teaching room at around 1:22 in the afternoon according to the image metadata.

He shared one of the images via Grindr,[3] leading to his arrest. Our current information is the video images have not been shared or reproduced beyond the one time. The Grindr recipient alerted the police. There is no evidence the Grindr recipient transmitted or saved the images. We have no reports of NCMEC having seen the image on the world wide web. The videos are from October 1, 2021, almost a year and a half ago. If the videos had been shared beyond the single Grindr recipient, NCMEC would almost certainly have a report of that. It is reasonable to infer that the videos are not in the public domain. The Grindr recipient's quick alerting of the police appears to have precluded further dissemination of the images.

---

[3] A dating app. See PSR ¶ 5, note 1.

The conduct violates § 2251. Benjamin used the minor victim to create an image of sexually explicit conduct. The statute carries a fifteen year minimum mandatory incarcerative sentence. The conduct is not the "least harmful" way of violating the statute. But it is not the most serious. It is at the lower end of the scale of a sexual touching. It is the child's hand. There is no ejaculation. There is no oral contact. There is no sexual touching of the child. There is no digital penetration. There is no sexual penetration. The child's body is clothed. The child's genitals are not touched or exposed. The incident is brief. The conduct and image involve the child touching Benjamin. The genitals displayed are Benjamin's and it is Benjamin who is touched, not the victim. There is no nakedness of the victim. The child remains clad. There is no oral activity. There is no penetration. No part of the child's anatomy is on display. Benjamin is the focus of the image. Comparing this to those with sentences of 20 years or more, the conduct here is less culpable. Comparing the conduct to those sentenced to 25 years, each of them involved multiple events and images, rape, force oral sex, a large collection of child pornography, or disseminating the images broadly. Generally each of them assaulted a naked or partially naked child. Several had a long history of pedophilic conduct often including prior convictions.

**Untreated Medical Condition**

Benjamin is diagnosed with bi-polar disorder. He was not taking his prescribed medication at the time of the offense conduct. He attributes his failure to take his medication to a combination of his historic distrust of doctors based on his misdiagnosed back injury, his insecurity and feeling of stigmatization over his mental health, and dislike of how the medication made him feel.

He was evaluated by Dr. Magnuson following his arrest. She opines the conduct occurred during a period of mania. Benjamin was sexually abused as a child and never revealed this or sought treatment. Benjamin's own trauma history suggest he has untreated

11

underlying issues. His mania facilitated his conduct. With counseling and proper medication it is doubtful he would have engaged in this conduct. There are no historic signs of pedophilia. He has been treating for a long time for depression and drug abuse as outlined in the PSR and Dr. Magnuson's report. He has a history of mania and hypomania. Hypomania is a milder version of mania that lasts for a short period (usually a few days). Mania is a more severe form that lasts for a longer period (a week or more).  He has been in custody since his initial arrest on October 8, 2021. He is prescribed and taking Zyprexa (antipsycotic), Lamictal (moody stabilizer), Zoloft (for depression), busbar (for anxiety) and clondine (also for anxiety).   ¶ 54.

**Vulnerable Victim Enhancement.**

The victim was a student meeting the "supervisory control" enhancement of §2G2.1(b)(5). PSR ¶ 25. We accept the victim has disabilities. But they did not make her more vulnerable under the facts of this case. Every young student is "vulnerable" to misconduct by their teacher. There is also a 4 level increase for being under age 12. §2G2.1(b)(1)(A). PSR ¶ 22. Both age and Benjamin being her teacher have already combined to increase the base offense level of 32 to a level 38.

> Guideline § 3A1.1 provides for a two-level increase if the victim is "unusually
> vulnerable due to age;" but it also states that no increase is warranted if "the
> offense guideline specifically incorporates this factor." See U.S.S.G. § 3A1.1,
> comment. (n. 2). Obviously, the guideline for "Sexual Exploitation of a Minor"
> specifically incorporates the factor of age. In addition, the guideline provides
> for a level increase of two if the minor victim is under the age of 12. To
> increase that guideline's base offense level of 25 by two levels because the
> victim is a minor (over 12 years old) would be to "double count."

*U.S. v. Plaza-Garcia*, 914 F.2d 345, 347 (1ˢᵗ. Cir.1990).[4]


The First Circuit also vacated the vulnerable victim enhancement in a Mann Act case - a law passed to protect women taken inter-state for prostitution. A combination of youth, mothers of small children and  lack of work (economic hardship) failed to qualify for the enhancement. "In considering whether to adjust or depart from the applicable base offense level, then, the relevant question was whether in light of the particular circumstances of their case the Sabatinos should have received an additional punishment over and above the severe punishment already set by the sentencing guidelines because, compared to the ordinary Mann Act violators, the conduct they engaged in was somehow more culpable. In other words, the sentencing court had to determine whether the Sabatinos' conduct was worse than the typical instance of the crime." *U.S. v. Sabatino*, 943 F.2d 94, 102 (1ˢᵗ Cir. 1991)(the "severe" sentences vacated were 108 months for Joseph Sabatino and 60 months for Diane Sabatino, Id. 100.)


Under the facts in this case, Benjamin's conduct, particularly after the already applied enhancements, is not "worse." The base offense begins very high, a level 32 already accounting for most culpability. It is then elevated 4 levels for under age 12, 2 levels for the

---

[4] It is worth noting that the under age 12 enhancement is now 4 levels, not the 2 levels applicable in *Plaza-Garcia* in 1990. The vacated as over-calculated sentence in *Plaza-Garcia* was 97 months, which was an upward departure. The applicable guideline was 57 to 71 months. Id. 347. This is for the same charge as Conroy is being sentence, sexual exploitation of a minor in violation of 18 U.S.C. § 2551(a).   The indictment charged Plaza Garcia with ten counts of sexually exploiting a minor (one count for each of ten different minors he photographed), 18 U.S.C. § 2551(a), one count of shipping child pornography in interstate commerce, id. § 2252(a)(1), and one count of receiving child pornography in interstate commerce, id. § 2252(a)(2). In a plea agreement accepted by the court, Plaza Garcia pleaded guilty to one sexual exploitation offense and the government dropped the remaining eleven charges. Id. 346. Since 1990, the statutory penalties have dramatically changed as have the guidelines. The base offense level has climbed from a level 25 to the current level 32. Id. In the time since *Plaza*, the penalties for the same conduct have more than doubled.

victim's touching of the defendant's genitals, 2 levels for the Grindr post and another 2 levels for supervisory control for a 10 level increase to an already high base offense level.[5]

In *U.S. v. Footman*, 66 F.Supp.2d 83, 95–96 (D.Mass.,1999) the court rejected the government's invitation to apply the enhancement.

> The court is not to apply this increase if the offense guidelines already specifically incorporate the particular factor of vulnerability into the baseline calculation. See *Koon v. United States*, 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In the case of U.S.S.G. § 2G1.2, the age of the victim is included in the offense guideline, as is reflected in the incremental increases provided based on the age of the minor who is transported. Citing *Sabatino*.

While it is true the victim is a non-verbal special needs student, Benjamin only taught special needs students. There is no evidence indicating he targeted the victim due to her special needs. The enhancement under §3A1.1 should not apply. The factors have already been included in the base offense level and other non-disputed enhancements.

## Conclusion

The conduct in this case is both serious and aberrant. Benjamin is a 33 year old college graduate who was a dedicated special education assistant.  He has no history of sexual impropriety. He has no history of child abuse. He has no history of workplace impropriety. He lived with his girlfriend at the time of the crime. Benjamin does have a long

---

[5] The base level of 32 is high when compared to other offenses against people. Voluntary manslaughter is a base 29, 2A1.3. Conspiracy to solicit murder is a 33, 2A1.5. Assault with the intent to commit murder is a 33, 2A2.1. Aggravated assault is a 14, 2A2.2. Criminal sexual abuse of a ward is a base 14, 2A3.3, Statutory Rape is a base 18 and a 22 if supervisory control, 2A3.2.

struggle with addiction, depression and bipolar disorder.  He has sought and engaged in mental health treatment on and off since at least 2017.  The focus of health care professionals has been on his head injuries, addiction and depression.  The bipolar diagnosis, despite being in records from 2018, was not a major focus of his medical or mental health treatment. Although Benjamin moved to Portland in 2020, his doctor was in Augusta. He failed to get the treatment he needed.  His mania grew and Benjamin did not seek medical intervention. He was scared, embarrassed and effected by the mania. Benjamin has spent a year and a half in jail. He now takes a full complement of medications. It took him over six months to find a medication balance. He is now stable and recognizes his need for lifelong medication.  We ask the court to recommend Benjamin to the BOP Devon's facility so he can receive treatment for his physical and mental health and so he can receive offender counseling.

A sentence of 18 years incarceration (216 months) followed by 7 years of supervised release with conditions is a long and punitive sentence. It exceeds the minimum mandatory. It meets all of the §3553(a) factors. Benjamin will be over 50 years old upon release. He will be on supervision for seven years. He will have to register, potentially for the balance of his life. He will need to attend treatment, and cooperate with proscribed medication. He will leave prison with nothing and have to restart his life well into middle age.

DATE: March 1, 2023                            /s/ *David Beneman*
                                               David Beneman
                                               Attorney for Benjamin Conroy

David Beneman
Federal Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070 ext. 6921
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

I, **David Beneman**, attorney for **Benjamin Conroy**, hereby certify that I have served, electronically, a copy of the **within "AMENDED DEFENSE SENTENCING MEMORANDUM"** upon **Sheila Sawyer,** Assistant United States Attorney, United States Attorney's Office, Portland, ME and all counsel of record, via the ECF system.

/s/ *David Beneman*
David Beneman

DATE: March 1, 2023

CC:   Benjamin Conroy